Joel E. Elkins (SBN 256020)
jelkins@weisslawllp.com
**WEISSLAW LLP**
9107 Wilshire Blvd., Suite 450
Beverly Hills, CA 90210
Telephone: 310/208-2800
Facsimile:  310/209-2348

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HAROLD LITWIN, | Case No. |
| Plaintiff, | |
| v. | **COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** |
| GENOMIC HEALTH, INC., JULIAN BAKER, FELIX BAKER, FRED COHEN, BARRY P. FLANNELLY, HENRY J. FUCHS, GINGER L. GRAHAM, GEOFFREY M. PARKER and KIMBERLY POPOVITS, | JURY TRIAL DEMANDED |
| Defendants. | |

Plaintiff Harold Litwin ("Plaintiff"), by and through his undersigned counsel, for his complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

# NATURE OF THE ACTION

1. This action is brought by Plaintiff against Genomic Health, Inc. ("Genomic Health" or the "Company") and the members of its Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9, and to enjoin the vote on a proposed transaction, pursuant to which Genomic Health will be acquired by Exact Sciences Corporation ("Exact Sciences") through Exact Sciences' wholly-owned subsidiary Spring Acquisition Corp. ("Merger Sub") (the "Proposed Transaction").

2. On July 29, 2019, Genomic Health and Exact Sciences issued a joint press release announcing they had entered into an Agreement and Plan of Merger dated July 28, 2019 (the "Merger Agreement"), whereby for each share of Genomic Health common stock they own, Genomic Health stockholders will receive $27.50 in cash and $44.50 in shares of Exact Sciences stock, subject to a 10% collar centered on Exact Sciences' volume-weighted average price for the 45 trading days ended July 26, 2019 (the "Merger Consideration"). Pursuant to the Merger Agreement, Merger Sub will merge with and into Genomic Health, with Genomic Health surviving as a wholly owned subsidiary of Exact Sciences.

3. On October 4, 2019, defendants filed a Definitive Proxy Statement on Schedule 14A (the "Proxy Statement") with the SEC. The Proxy Statement, which recommends that Genomic Health stockholders vote in favor of the Proposed Transaction, omits or misrepresents material information concerning, among other things: (i) Company management's financial projections for Genomic Health, the pro forma combined company, and Exact Sciences, relied upon by the Company's financial advisor, Goldman Sachs & Co. LLC ("Goldman"), in its financial analyses; (ii) the data and inputs underlying the financial valuation analyses that support the fairness opinion

provided by the Company's financial advisor Goldman; and (iii) Company insiders' potential conflicts of interest.  Defendants authorized the issuance of the false and misleading Proxy Statement in violation of Sections 14(a) and 20(a) of the Exchange Act.

4. In short, unless remedied, Genomic Health's public stockholders will be irreparably harmed because the Proxy Statement's material misrepresentations and omissions prevent them from making a sufficiently informed voting or appraisal decision in connection with the Proposed Transaction.  Plaintiff seeks to enjoin the stockholder vote on the Proposed Transaction unless and until such Exchange Act violations are cured.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. §1331 (federal question jurisdiction).

6. This Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations in this District, or is an individual who has sufficient minimum contacts with this District so as to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Plaintiff's claims arose in this District, where a substantial portion of the actionable conduct took place, where most of the documents are electronically stored, and where the evidence exists.  Genomic Health is incorporated in Delaware and is headquartered in this District.  Moreover, each of the Individual Defendants, as Company officers or directors, either resides in this District or has extensive contacts within this District.

## THE PARTIES

8. Plaintiff is, and has been at all times relevant hereto, a continuous stockholder of

Genomic Health.

9. Defendant Genomic Health is a Delaware corporation and maintains its principal executive offices at 301 Penobscot Drive, Redwood City, California 94063. Genomic Health's common stock is traded on the NASDAQ Global Select Market under the ticker symbol "GHDX."

10. Defendant Julian Baker ("J. Baker") is the Company's Lead Independent Director and has been a director of the Company since January 2001.

11. Defendant Felix Baker ("F. Baker") has been a director of the Company since 2012.

12. Defendant Fred Cohen ("Cohen") has been a director of the Company since April 2002.

13. Defendant Barry P. Flannelly ("Flannelly") has been a director of the Company since April 2019.

14. Defendant Henry J. Fuchs ("Fuchs") has been a director of the Company since September 2013.

15. Defendant Ginger L. Graham ("Graham") has been a director of the Company since 2008.

16. Defendant Geoffrey M. Parker ("Parker") has been a director of the Company since June 2016.

17. Defendant Kimberly Popovits ("Popovits") has served as Genomic Health's Chairman of the Board since 2012, and Chief Executive Officer ("CEO") and President since 2009.

18. Defendants identified in paragraphs 10-17 are collectively referred to herein as the "Board" or the "Individual Defendants."

**OTHER RELEVANT ENTITIES**

19. Exact Sciences is a Delaware corporation and maintains its principal executive offices at 441 Charmany Drive, Madison, Wisconsin 53719. Exact Sciences is a molecular

diagnostics company focused on the early detection and prevention of some of the deadliest forms of cancer. Exact Sciences' common stock is traded on the NASDAQ Global Select Market under the ticker symbol "EXAS."

20.   Merger Sub is a direct, wholly-owned subsidiary of Exact Sciences and was formed solely for the purpose of carrying out the merger.

## SUBSTANTIVE ALLEGATIONS

**Company Background and the Proposed Transaction**

21.   Genomic Health is a global provider of genomic-based diagnostic tests that address both the overtreatment and optimal treatment of early and late stage cancer. The Company's Oncotype IQ Genomic Intelligence Platform leads the translation of clinical and genomic data into clinically actionable results for cancer treatment planning. The Oncotype IQ Genomic Intelligence Platform is comprised of Genomic Health's Oncotype DX gene expression tests for breast, prostate and colon cancers, and Oncotype DX AR-V7 Nucleus Detect test for advanced stage prostate cancer.

22.   In January 2004, the Company launched its first Oncotype DX test, which is used to predict the likelihood of cancer recurrence and the likelihood of chemotherapy benefit in early stage invasive breast cancer patients. In January 2010, Genomic Health launched its second Oncotype DX test, the first multigene expression test developed to assess risk of recurrence in stage II colon cancer patients. In December 2011, Oncotype DX became available for patients with ductal carcinoma in situ, a pre-invasive form of breast cancer. In June 2012, the Company extended Oncotype DX colon cancer test to patients with stage III disease treated with oxaliplatin-containing adjuvant therapy. In May 2013, the Company launched its Oncotype DX prostate cancer test, which is used to predict disease aggressiveness in men with low and intermediate risk disease. In

February 2018, the Oncotype DX AR-V7 Nucleus Detect test for men with metastatic castration-resistant prostate cancer became commercially available.

23. On May 7, 2019, the Company announced its first quarter 2019 financial results. For the quarter, the Company reported total revenue of $108.8 million, compared with $92.6 million in the first quarter of 2018, including U.S. product revenue of $91.0 million, compared to $78.9 million in the first quarter of 2018. Net income was $13.0 million, or $0.35 and $0.34 per share on a basic and diluted basis, respectively, a $16.8 million increase compared with a net loss of $3.8 million, or $0.11 per share on a basic and diluted basis, for the first quarter of 2018. Defendant Popovits commented on the strong financial results, stating:

> In the first quarter of 2019, we delivered more than 17 percent overall revenue growth and $13.0 million in profit driven by significant growth across all key product areas. . . . Our first quarter performance was very strong, based in part on the impact of the landmark TAILORx trial results, which are continuing to drive increased Oncotype DX Breast Recurrence Score test usage both in the United States and globally. We expect to achieve double-digit revenue growth for the year with continued growth across key products and look forward to the national reimbursement decision in Germany for the Oncotype DX breast cancer test.

24. On July 29, 2019, Genomic Health reported its second quarter 2019 financial results, including raising its revenue and net income guidance for full year 2019. Total revenue for the quarter was $114.1 million, compared with $95.6 million for the second quarter of 2018, including U.S. product revenue of $96.0 million, compared with $81.4 million for the second quarter of 2018. Net income was $16.0 million, or $0.43 and $0.42 per share on a basic and diluted basis, respectively, a $7.7 million increase compared with net income of $8.3 million, or $0.23 per share on a basic and diluted basis, for the second quarter of 2018. In the press release, defendant Popovits stated:

> In the second quarter of 2019 we delivered 19% topline revenue growth and twice the profit compared to last year. These record results were driven by strength across our entire business with first-half revenue growth of 13% in U.S. invasive breast cancer, 44% in U.S. early-stage prostate cancer and 28% outside of the United States. . . . With this record first-half performance, a public reimbursement

recommendation in Germany and increasing private coverage for our urology tests, we are raising both our full-year 2019 revenue and net income guidance.

25.     Also on July 29, 2019, Genomic Health and Exact Sciences issued a joint press release announcing the Proposed Transaction, which stated in relevant part:

MADISON, Wis. And REDWOOD CITY, Calif., July 29, 2019 -- Exact Sciences Corp. (NASDAQ: EXAS) and Genomic Health, Inc. (NASDAQ: GHDX) today announced that the companies have entered into a definitive agreement under which Exact Sciences will combine with Genomic Health for $72.00 per share in a cash and stock transaction valued at $2.8 billion. The transaction, which has been unanimously approved by the Boards of Directors of both companies, is expected to be completed by the end of 2019.

Together, Exact Sciences and Genomic Health will create a leading global cancer diagnostics company. The combined company will offer two of the strongest and fastest growing brands in cancer diagnostics, Cologuard and Oncotype DX, providing a robust platform for continued growth. With this enhanced platform, including a commercial presence in more than 90 countries, the combined company expects to continue to increase adoption of current tests, and to bring new innovative cancer diagnostics to patients throughout the world.

On a pro forma basis, the combined company expects to generate revenue of approximately $1.6 billion and gross profit of approximately $1.2 billion in 2020. Additionally, the combination is expected to generate annualized cost synergies of approximately $25 million within the third full year following close, primarily through reducing public company costs and purchasing optimization.

"Uniting the best minds and molecular diagnostics capabilities will advance the fight against cancer. Combining industry pioneers Exact Sciences and Genomic Health is a pivotal step toward building the leading cancer diagnostics company in the world," said Kevin Conroy, chairman and CEO of Exact Sciences. "Exact Sciences is continuing to grow sales and expand adoption of Cologuard at a rapid pace, and Genomic Health's Oncotype DX is the global standard of care to inform treatment decisions for women with breast cancer. Together, with our collective resources and broader platform, we will be able to provide our existing tests to more people, while also accelerating the development and launch of future cancer diagnostic tests. We are excited to join together two teams who are united in their dedication to making a positive impact on patients' lives."

"We are very pleased to join forces with Exact Sciences, a company and team with which we have a shared vision to revolutionize the way cancer is diagnosed and treated," said Kim Popovits, chairman of the board, chief executive officer and president of Genomic Health. "Genomic Health has achieved incredible success over nearly two decades in pioneering cancer diagnostics, and the recent landmark TAILORx trial results set a new standard of care for the use of the Oncotype DX test for women with early-stage invasive breast cancer. This transaction provides

immediate value to Genomic Health stockholders through an upfront cash payment, as well as ownership in a combined company with enhanced financial strength and the commercial and R&D capabilities to continue to drive significant growth into the future."

\* \* \*

**Transaction Terms**

Under the terms of the agreement, for each share of Genomic Health common stock they own, Genomic Health stockholders will receive $27.50 in cash and $44.50 in shares of Exact Sciences stock, subject to a 10% collar centered on Exact Sciences' volume-weighted average price for the 45 trading days ended July 26, 2019.

Based on the parties' closing stock prices as of July 26, 2019, the last trading day prior to today's announcement, the total per-share consideration represents a premium of approximately 19% to Genomic Health's volume-weighted average price ("VWAP") for the last 30 trading days. Upon closing, Exact Sciences shareholders are expected to own approximately 91% of the combined company, and Genomic Health stockholders are expected to own approximately 9%.

**Transaction Approvals**

The transaction is subject to customary closing conditions and regulatory approvals, including the approval of stockholders of Genomic Health. Felix and Julian Baker and certain funds advised by entities with whom they are affiliated, which collectively own approximately 25.3% of the outstanding shares of Genomic Health common stock, have entered into agreements to vote in favor of the transaction.

**Insiders' Interests in the Proposed Transaction**

26.     Genomic Health insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders.  The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff and the public stockholders of Genomic Health.

27.     Notably, certain Company insiders have potentially secured positions for themselves with the combined company upon consummation of the Proposed Transaction.  For example, the Proxy Statement sets forth, "[c]ertain of Genomic Health's executive officers may continue employment with, or otherwise be retained to provide services to, Exact Sciences or the surviving

corporation following the completion of the merger." Proxy Statement at 79.  Additionally, in the July 29, 2019 press release announcing the Proposed Transaction, Kevin Conroy ("Conroy"), Chairman and CEO of Exact Sciences, is quoted as stating, "[w]e are excited to join together two teams who are united in their dedication to making a positive impact on patients' lives." Similarly, defendant Popovits is quoted as stating, "[w]e are very pleased to join forces with Exact Sciences, a company and team with which we have a shared vision to revolutionize the way cancer is diagnosed and treated."

28.   Further, under the terms of the Merger Agreement, all unvested restricted stock unit awards and stock options held by non-employee directors will be subject to automatic vesting.  The estimated aggregate amount that would be payable to Genomic Health's seven non-employee directors in connection with the vesting of their outstanding equity awards is $1,456,304.

29.   Moreover, if they are terminated in connection with the Proposed Transaction, the Company's named executive officers are set to receive substantial cash severance payments, as set forth in the following table:

**Golden Parachute Compensation**

| Name | Cash ($)(1) | Equity ($)(2) | Perquisites/Benefits ($)(3) | Total ($) |
|---|---|---|---|---|
| Kimberly J. Popovits | 4,392,640 | 8,992,387 | 36,930 | 13,421,957 |
| G. Bradley Cole | 2,441,501 | 2,850,894 | 51,587 | 5,343,981 |
| Frederic Pla, Ph.D. | 2,370,550 | 3,284,555 | 52,985 | 5,708,090 |
| Steven Shak, M.D. | 1,412,952 | 2,274,304 | 38,690 | 3,725,946 |
| James Vaughn | 1,077,542 | 2,671,486 | 39,739 | 3,788,767 |

**The Proxy Statement Contains Numerous Material Misstatements or Omissions**

30.   Defendants filed a materially incomplete and misleading Proxy Statement with the SEC and disseminated it to Genomic Health's stockholders.  The Proxy Statement misrepresents or omits material information that is necessary for the Company's stockholders to make an informed voting decision in connection with the Proposed Transaction.

31. Specifically, as set forth below, the Proxy Statement fails to provide Company stockholders with material information or provides them with materially misleading information concerning: (i) Company management's financial projections for Genomic Health, the pro forma combined company, and Exact Sciences, relied upon by the Company's financial advisor, Goldman, in its financial analyses; (ii) the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by the Company's financial advisor Goldman; and (iii) Company insiders' potential conflicts of interest.

*Material Omissions Concerning Genomic Health's and Exact Sciences' Financial Projections*

32. The Proxy Statement omits material information regarding Genomic Health management's financial projections for the Company, the pro forma combined company, and for Exact Sciences standalone company. Specifically, for Genomic Health and the pro forma combined company, the Proxy Statement fails to include all line items used to calculate EBITDA over the projection period and stock-based compensation. Moreover, the Proxy Statement indicates that in connection with rendering its fairness opinion Goldman reviewed "certain internal financial analyses and forecasts . . . for Exact Sciences standalone prepared by Genomic Health's management . . . . *Id.* at 63. The Proxy Statement, however, wholly fails to disclose Genomic Health management's financial projections for Exact Sciences, which were provided to and relied upon by Goldman.

33. The omission of this information renders the statements in the "Certain Unaudited Prospective Financial Information" section of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

*Material Omissions Concerning Goldman's Financial Analyses*

34. The Proxy Statement describes Goldman's fairness opinion and the various valuation analyses performed in support of its opinion. However, the description of Goldman's

- 10 -
COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

fairness opinion and analyses fails to include key inputs and assumptions underlying these analyses. Without this information, as described below, Genomic Health's public stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on Goldman's fairness opinion in determining whether to vote in favor of the Proposed Transaction.

35. With respect to Goldman's *Illustrative Present Value of Future Share Price Analysis—Genomic Health Standalone*, the Proxy Statement fails to disclose: (i) net debt; (ii) the assumed amount of Genomic Health's net cash; and (iii) the number of fully diluted outstanding shares of Genomic Health, each as of December 31, 2019 through 2021, as provided by Genomic Health's management.

36. With respect to Goldman's *Illustrative Pro Forma Present Value of Future Share Price Analysis—Value to Genomic Health Stockholders*, the Proxy Statement fails to disclose: (i) the forward year pro forma revenue for the pro forma combined company (including synergies); and (ii) the net debt and number of fully diluted outstanding shares of the pro forma combined company as of December 31, 2019 through 2021.

37. With respect to Goldman's *Illustrative Discounted Cash Flow Analysis—Genomic Health Standalone*, the Proxy Statement fails to disclose: (i) the fully diluted outstanding shares of Genomic Health common stock; (ii) quantification of the terminal year estimate of the free cash flow to be generated by Genomic Health used to derive the terminal values for the Company; and (iii) quantification of the inputs and assumptions underlying the discount rate range of 9.0% to 10.0%.

38. With respect to Goldman's *Illustrative Discounted Cash Flow Analysis—Pro Forma Value Per Share to Genomic Health Stockholders*, the Proxy Statement fails to disclose: (i) pro forma net debt for the pro forma combined company as of June 30, 2019, as provided by Genomic Health's management; (ii) the number of outstanding shares of the pro forma combined

company following the merger; (iii) quantification of the terminal year estimate of the free cash flow to be generated by the pro forma combined company (including synergies) used to derive the terminal value in the analysis; and (iv) quantification of the inputs and assumptions underlying the discount rate range of 8.5% to 9.5%.

39. With respect to Goldman's *Selected Transactions Analysis* and *Premia Analysis*, the Proxy Statement fails to disclose the individual multiples, financial metrics and the acquisition premia for each of the transactions analyzed by Goldman.

40. When a banker's endorsement of the fairness of a transaction is touted to stockholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.

41. The omission of this information renders the statements in the "Certain Unaudited Prospective Financial Information" and "Opinion of Genomic Health's Financial Advisor" sections of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning Company Insiders' Potential Conflicts of Interest***

42. The Proxy Statement fails to disclose material information concerning the conflicts of interest faced by Genomic Health insiders.

43. For example, the Proxy Statement states: "Certain of Genomic Health's executive officers may continue employment with, or otherwise be retained to provide services to, Exact Sciences or the surviving corporation following the completion of the merger. As of the date of this proxy statement/prospectus, no new employment or compensation arrangements between such persons and Exact Sciences or the surviving corporation have been negotiated or established . . . ." *Id.* at 79. Further, in the July 29, 2019 press release announcing the Proposed Transaction, Conroy, Chairman and CEO of Exact Sciences, is quoted as stating, "[w]e are excited to join together two teams who are united in their dedication to making a positive impact on patients' lives." Similarly,

defendant Popovits is quoted as stating, "[w]e are very pleased to join forces with Exact Sciences, a company and team with which we have a shared vision to revolutionize the way cancer is diagnosed and treated."

44.     Yet, the Proxy Statement fails to disclose the details of any employment and retention-related discussions and negotiations that occurred between Exact Sciences and Genomic Health's management, including who participated in all such communications, when they occurred and their content.  The Proxy Statement further fails to disclose whether any of Exact Sciences' prior proposals or indications of interest mentioned management retention with the combined company.

45.     Communications regarding post-transaction employment and merger-related benefits during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for stockholders to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

46.     The omission of this information renders the statements in the "Background of the Merger" and "Interests of Certain Persons in the Merger" sections of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

47.     The Individual Defendants were aware of their duty to disclose this information and acted negligently (if not deliberately) in failing to include this information in the Proxy Statement.  Absent disclosure of the foregoing material information prior to the stockholder vote on the Proposed Transaction, Plaintiff and the other stockholders of Genomic Health will be unable to make a sufficiently informed decision whether to vote in favor of the Proposed Transaction or seek appraisal and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

# CLAIMS FOR RELIEF

## COUNT I

**Claims Against All Defendants for Violations of Section 14(a) of the Exchange Act and SEC Rule 14a-9 Promulgated Thereunder**

48. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

49. During the relevant period, defendants disseminated the false and misleading Proxy Statement specified above, which failed to disclose material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

50. By virtue of their positions within the Company, the defendants were aware of this information and of their duty to disclose this information in the Proxy Statement. The Proxy Statement was prepared, reviewed, and/or disseminated by the defendants. It misrepresented and/or omitted material facts, including material information about the financial projections for the Company, the pro forma company and Exact Sciences, the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by the Company's financial advisor, and Company insiders' potential conflicts of interest. The defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

51. The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder will consider them important in making a voting decision on the Proposed Transaction.

52. By reason of the foregoing, defendants violated Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

53. Because of the false and misleading statements in the Proxy Statement, Plaintiff is threatened with irreparable harm, rendering money damages inadequate. Therefore, injunctive

relief is appropriate to ensure defendants' misconduct is corrected.

## COUNT II

### Claims Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act

54. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

55. The Individual Defendants acted as controlling persons of Genomic Health within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Genomic Health and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements that Plaintiff contends are false and misleading.

56. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

57. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same. The Proxy Statement at issue contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in the making of the Proxy Statement.

58. In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction. The Proxy Statement purports to describe the various issues and information that they

reviewed and considered—descriptions the Company directors had input into.

59. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

60. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of defendants' conduct, Genomic Health's stockholders will be irreparably harmed.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of Genomic Health, and against defendants, as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

D. Granting such other and further relief as this Court may deem just and proper.

## **JURY DEMAND**

Plaintiff demands a trial by jury on all claims and issues so triable.

| | | |
|---|---|---|
| 1 | Dated: October 10, 2019 | **WEISSLAW LLP**<br>Joel E. Elkins |
| 2 | | |
| 3 | | By: /s/ Joel E. Elkins |
| 4 | | Joel E. Elkins<br>9107 Wilshire Blvd., Suite 450<br>Beverly Hills, CA 90210<br>Telephone:  310/208-2800<br>Facsimile:   310/209-2348<br>         -and-<br>Richard A. Acocelli<br>1500 Broadway, 16th Floor<br>New York, NY  10036<br>Telephone: 212/682-3025<br>Facsimile:  212/682-3010 |

*Attorneys for Plaintiff*